UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------------X

DARLEA FELDER,

                        Plaintiff,

      v.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS; JAMIE SORBER,
*individually*; JOSEPH TERRA, *individually*; and TERRI
FAZIO, *individually*,

                        Defendants.

Civil Action No.

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

------------------------------------------------------------------------X

Plaintiff, DARLEA FELDER, as and for her Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")) and 42 U.S.C. § 1981, and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and harassed on the basis of her race and sex, and retaliated against on the basis of her reporting of the same.[1]

## JURISDICTION AND VENUE

---

[1] As Plaintiff's analogous claims under the Pennsylvania Human Relations Act ("PHRA") are not yet ripe, Plaintiff reserves the right to amend this Complaint to add such claims once they are available to her.

2. This action involves questions of federal law under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

3. This court will have supplemental jurisdiction over the forthcoming state causes of action, as they arise out of the same nucleus of operative fact.

4. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the County of Montgomery, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events at issue took place in Montgomery County, Pennsylvania within the Eastern District of Pennsylvania.

5. Around July 10, 2020, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") against all Defendants as set forth herein.

6. Around March 1, 2021, the EEOC issued Plaintiff her Notice of Right to Sue.

7. This action is being commenced within 90 days of receipt of the EEOC Notice of Right to Sue.

## PARTIES

8. Plaintiff DARLEA FELDER (hereinafter referred to as "Plaintiff" and/or "FELDER") is seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer on the basis of her race and sex, and retaliated against for complaining about and reporting the discrimination.

9. Plaintiff FELDER is an individual Black female who resides in the County of Philadelphia within the Commonwealth of Pennsylvania.

10. At all times material, Defendant COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS (hereinafter referred to as Defendant and/or "PADOC") was and is a Pennsylvania State Agency organized and existing under the laws of the Commonwealth of Pennsylvania.

11. At all times material, Defendant PADOC operated and continues to operate a correctional institution located at 1200 Mokychic Drive, Collegeville, PA 19426 known as "SCI [State Correctional Institution] Phoenix."

12. At all times material since January 2020, Defendant JAMIE SORBER (hereinafter referred to as "SORBER") was and is employed by Defendant PADOC as Superintendent of SCI Phoenix.

13. At all times material, Defendant SORBER held supervisory authority over Plaintiff.

14. At all times material, Defendant JOSEPH TERRA (hereinafter referred to as "TERRA") was and is employed by Defendant PADOC as Deputy Superintendent for Centralized Services of SCI Phoenix.

15. At all times material, Defendant TERRA held direct supervisory authority over Plaintiff.

16. At all times material, Defendant TERRI FAZIO (hereinafter referred to as "FAZIO") was and is employed by Defendant PADOC as Director of the DOC Bureau of Correction Education.

17. At all times material, Defendant FAZIO held supervisory authority over Plaintiff.

## MATERIAL FACTS

18. Plaintiff claims a continuous practice of discrimination and claims a continuing violation, and makes all claims herein under the continuing violations doctrine.

19. Around April 2013, PADOC hired Plaintiff as a business teacher, initially working out of Defendant's correctional institution known as "SCI Graterford."

20. From the outset of Plaintiff's employment, Defendants discriminated against her based on her race and sex and treated her differently than Defendants' Caucasian and male employees.

21. When Defendant PADOC closed SCI Graterford in July 2018, Plaintiff began working at her current location of SCI Phoenix.

22. Plaintiff is currently the only female African American teacher working for Defendants at SCI Phoenix.

23. Notably, when Defendants' teachers moved to SCI Phoenix from SCI Graterford, Defendants placed Plaintiff in the most dangerous and undesirable location in the new building, located in the back near the Hearing Examiner room for Defendants' inmates. Defendants also instructed Plaintiff that she was not permitted to lock her classroom door under any circumstances despite the location, in response to which she detailed her reasoning for her need to do so to school principal Barr.

24. In contrast, Defendants' Caucasian teachers were permitted to occupy classrooms in the front of the building, and Defendants even placed two Caucasian new hires in front rooms while denying Plaintiff the same opportunity, despite the obvious differences in seniority.

25. Throughout her employment, Plaintiff has also been paid less than her similarly situated Caucasian and male coworkers, including teachers who possess fewer credentials than Plaintiff.

26. For example, both Plaintiff and her male coworker Terry Chrapacz ("Chrapacz") began being paid at the same scale, and both provided Defendants proof of their higher education credentials in order to be paid a higher level in accordance with Defendants' policies. However, once they received proof of the necessary credentials, Defendants paid Chrapacz retroactively for the time he was paid at the lower level but refused to do the same for Plaintiff.

27. Plaintiff brought up the disparities in pay between herself and other teachers on numerous occasions to Defendant FAZIO, but her reports were not sufficiently addressed.

28. Defendants have also discriminated against Plaintiff based on her sex throughout her employment in myriad other ways.

29. For example, Defendants Defendants frequently changed Plaintiff's job description to require her to perform additional work not expected of her male colleagues. Furthermore, Plaintiff was often required to teach additional classes and take on a larger workload than her similarly situated male colleagues.

30. Additionally, Defendants would often fail to provide Plaintiff with the tools and materials needed to properly perform her teaching duties, such as necessary rosters and student passes as well as the curriculum for newly-assigned classes, despite providing these tools to male teachers.

31. Despite Defendants' failure to provide Plaintiff with the necessary materials to perform her work responsibilities, Plaintiff attempted to perform the work to the best of her ability. However, Defendants continued to harass Plaintiff about her perceived lack of progress that stemmed directly from the differing treatment that Defendants afforded Plaintiff and her male peers.

32. Defendants' employees also nitpicked and harassed Plaintiff in ways that they did not subject her male coworkers to, such as singling her out and telling other employees that Plaintiff insisted on "special treatment" when she only asked to be treated equally.

33. Around June 1, 2020, Plaintiff was sitting in her classroom when she overheard three other teachers (Mark Smida, Mary Irvin, and Matthew Cruise) laughing and joking about the ongoing protests and civil unrest occurring in Philadelphia in response to the death of George Floyd.

34. Specifically, Plaintiff heard the three teaches repeatedly refer to the African American protesters were "animals" and were "running in and out of stores like animals."

35. Soon after, when Plaintiff was preparing for a staff meeting in another teacher's room, the same three teachers who had made the prior offensive comments walked into the room and smirked at Plaintiff.  Mark Smida ("Smida") then stated "Didn't I see you on TV yesterday on the Art Museum steps?" [Referring to the televised protests and riots in Philadelphia]."

36. In response, Plaintiff told Smida not to make any racial comments towards her. However, Smida continued, again asking "Didn't I see you?" and laughing.

37. As Plaintiff was highly offended by Smida's comments, she accordingly filed an "Incident Report" and reported the offensive comments in writing to Defendants' Office of Equal Employment Opportunity.

38. Several days later, Defendants summoned Plaintiff to a meeting in Defendant SORBER's office with several other superiors and coworkers, including Defendant TERRA, School Principal Barr, Smida, Mary Irvin, and several others.

39. In that meeting, SORBER stated that "someone" had filed a racial discrimination claim while staring directly at Plaintiff and glaring at her. SORBER continued, stating that "too many people had been filing claims" and that "several people in the room" have open investigations. SORBER's statements and actions made it perfectly clear that he was referring to Plaintiff, as the other people in the room also began staring at her. SORBER then read Defendant's policy regarding discrimination and left the room.

40. Following SORBER's statement, TERRA stated to the remaining employees that he was going to begin moving teachers' classroom locations while also staring at Plaintiff. TERRA then angrily stated to Plaintiff that she was going to have to teach in two separate rooms on both sides of the prison buildings. When Plaintiff asked if she was understanding correctly that she would be the only teacher required to move back and forth between rooms, TERRA stated in response to "do as you're told" and that "this will not be debated at all."

41. This change required Plaintiff to walk back and forth between different areas (in a prison complex totaling 27 buildings on a 265-acre/1,060,000 sq. ft. site) in all weather conditions in order to reach her assigned classrooms.

42. Accordingly, Defendants retaliated against Plaintiff for engaging in protected activity by altering the terms and conditions of her employment.

43. Following the meeting, Smida angrily confronted Plaintiff, stating that "[I] knew you were going to say something like that" and claimed that "[the comments] were just a joke."

44. Even more egregiously, around the following Monday, June 8, Defendants moved Smida's classroom directly next to Plaintiff's east side classroom, despite Plaintiff's prior

report of Smida's racial harassment and clear discomfort with working in close proximity to him following his harassing comments and behavior.

45. The same day, another of Plaintiff's coworkers, Richard Jacobs ("Jacobs"), began making harassing comments to Plaintiff, asking her "Is it true that you don't have a classroom?" and "Are you a transient?" In response, Plaintiff stated that it was not his business, but Jacobs continued to harass her, laughing and stating to Plaintiff that she was a "transient, because you have no home; you're not like the rest of us."

46. The next day, Jacobs continued his harassment, stating to another teacher in Plaintiff's presence "Don't be with Ms. Felder, she's a transient. She's like a homeless person traveling the streets."

47. Despite Plaintiff's reports to PADOC's Equal Employment Opportunity office, Defendants did not take her reports seriously. By means of example, when Plaintiff followed up with Tiffany Epoca, the Equal Employment Opportunity Office Director, Epoca stated to her that the meeting was "not retaliation" and that "I know for a fact that [SORBER] is not discriminating against you because he didn't give out any discipline."

48. As Plaintiff remains employed by Defendants, Defendants continue to discriminate against Plaintiff in numerous ways, including but not limited to continuing to pay her less than similarly situated Caucasian and/or male coworkers, continuing to discriminate between Plaintiff and her Caucasian and/or male coworkers in relation to distribution of necessary supplies to perform her job, and refusing to address legitimate concerns of Plaintiff when she attempts to communicate with Defendants' supervisors.

49. Accordingly, Defendants continue to discriminate against and harass Plaintiff based on her race and sex, and have failed to properly remedy Plaintiff's complaints of discrimination and retaliation.

50. As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

51. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

52. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

53. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

54. The above are just some examples of some of the discrimination and harassment to which Defendants subjected Plaintiff.

55. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

56. Plaintiff claims alternatively (in the event that Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable

claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER TITLE VII
(Not Against Defendants TERRA, SORBER, or FAZIO)**

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

58. Title VII of the Civil Rights Act of 1964 states in relevant parts as follows: § 2000e-2. *[Section 703]* (a) Employer practices: It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

59. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e *et seq.*, by discriminating against and harassing Plaintiff because of her race (Black) and sex (female).

60. As such, Plaintiff has been damaged as set forth herein.

**AS A SECOND CAUSE OF ACTION
FOR RETALIATION UNDER TITLE VII
(Not Against Defendants TERRA, SORBER, or FAZIO)**

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

63. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions and/or privileges of her employment because of her opposition to and reporting of the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. § 1981

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined: For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

66. Plaintiff, as a Black woman, was discriminated against and harassed by Defendants because of her race as provided under 42 U.S.C. § 1981 and has suffered damages as set forth herein.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER 42 U.S.C. § 1981

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined: For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

69. Plaintiff, as a Black woman, was retaliated against by Defendants because of her reporting of discrimination and harassment in violation of 42 U.S.C. § 1981 and has suffered damages as set forth herein.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  March 26, 2021

                                            **DEREK SMITH LAW GROUP, PLLC**
                                            *Attorneys for Plaintiff Darlea Felder*

                                  By: _____
                                      Nathaniel N. Peckham, Esq.
                                      1835 Market Street, Suite 2950
                                      Philadelphia, Pennsylvania 19103
                                      Tel. (215) 391-4790
                                      Fax: (215) 893-5288
                                      nathaniel@dereksmithlaw.com